IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
97 MAR 26 AM 8:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 26 1997

THOMAS D. ADCOCK, et al.,       )
                                )
    Plaintiff-Appellants,       )
                                )
vs.                             )   CIVIL ACTION NUMBER
                                )
HUNTSVILLE PRODUCTION CREDIT    )      94-C-1442-NE
ASSOCIATION,                    )
                                )
    Defendant-Appellee.         )

**MEMORANDUM OF OPINION**

In this bankruptcy appeal, debtors Thomas D. Adcock and his wife Lela Y. Adcock (the Adcocks) raise three issues. Based on the opinion which follows, the Court concludes that the decision of the Bankruptcy Court is due to be affirmed.

I

The Adcocks operate a poultry farm in Ardmore, Alabama.

On May 17, 1979, the Adcocks executed a variable rate promissory installment note ("the Note"), payable to the Huntsville Production Credit Association ("PCA") in the amount of $366,715. The Note initially accrued interest at an annual rate of eleven percent (11%).

Concomitant with the issuance of the Note, the Adcocks executed a stock purchase agreement ("the Agreement"). Under that

4

Agreement, the Adcocks bought PCA stock equal to ten percent (10%) of the amount of the Note. This stock purchase, required by the Farm Credit Act of 1933, was effected by a bookkeeping entry.[1]

In March of 1984, PCA commenced foreclosure proceedings against the Adcocks. The Adcocks responded by filing a Chapter 11 petition on March 28, 1994.

The Adcocks submitted to the Bankruptcy Court a plan of reorganization, which was confirmed on May 20, 1985. At the time of confirmation, the Bankruptcy Court found that the Adcocks owed PCA $300,546.44 in principal and $19,851.59 in interest, for a total of $320,398.44. The terms of the Plan provided for monthly installments in the amount of $6,500. However, the duration of the payment period was indefinite as the interest rate on the Note was variable.

The Adcocks paid the monthly installments for approximately six and one-half years. During that period, the Adcocks paid to PCA approximately $520,000.

In July 1993, the Adcocks filed both a Motion to Re-Open this case and a Motion to Enforce the Plan. The Bankruptcy Court reopened the case in the following month.

In their Motion To Enforce The Plan, the Adcocks requested that the court declare that they had fully performed the

---

[1] In 1979, the Farm Credit Act only required stock ownership equal to 2% of the balance of the loan or $1,000 minimum. 12 U.S.C.S. Section 2154(c).

terms of the Plan and that all liens associated with the PCA debt be removed. In an Amended Order dated February 22, 1994, the Bankruptcy Court denied the Adcocks' Motion to Enforce and upheld PCA's claim against the Adcocks in the amount of $39,282.50.

The Adcocks then filed a Motion to Alter or Amend the February Order, claiming that PCA's additional charges of $36,680 for the repurchase of PCA stock and $977.93 for attorney's fees, cost and conversion fees substantially modified the 1985 plan to include contractual rights which were not part of the original Plan. Additionally, the Adcocks claimed that the proceeds from the liquidation of an asset, the pullet farm, should have been applied to the outstanding debt at the time of the liquidation rather than nine months later. The Bankruptcy court summarily denied the motion on April 18, 1994. From that ruling comes this appeal.

## II

The Adcocks maintain that the Bankruptcy Court erred in its decision to credit the proceeds of the pullet farm sale as of February 22, 1994, rather than February 21, 1984.

It is undisputed that the pullet farm was liquidated by PCA in June 1993, and that the proceeds were not applied against the loan until February 21, 1994. The Bankruptcy Court held that the Adcocks are entitled to a credit for the nine months of

interest arising from PCA's tardy application of the proceeds. The complaint is that the court deducted the $4,427 interest from the Adcock's indebtedness as of the date of its decision, rather than the date on which the proceeds were actually applied to the indebtedness - February 24, 1984.[2]

The Adcock's first argument overlooks the consideration that the relevant facts existed as of the time of the Confirmation Plan. The Plan adopted PCA's balance as of August 31, 1984. As the Adcocks argue so forcefully on another issue in their brief:

> "...an order confirming a plan is an appealable order which has a res judicata effect on all other issues that could have been raised regarding the claims, in other words, a party in interest is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less [than] that to which it is otherwise legally entitled."

Appellants' Brief, p. 27. The Plan in this case was confirmed on May 20, 1985.

To the extent that the Bankruptcy Court erred, it did so in appellant's favor.

---

[2] As of February 24, 1984, the outstanding principal balance was $299,568.53. Debtor's Exhibit 6, 9/27/93 Hearing.

III

The Adcock's second argument is that PCA was not entitled to a stock charge back in June of 1985 when it reactivated their loan.

The Bankruptcy Court found that the $36,680 stock repurchase was required under the terms of the original note and PCA regulations.

The Adcocks have simply failed to show that this finding of fact is clearly erroneous. There is no legal error.

IV

Finally, the Adcocks maintain that the Bankruptcy Court erred by not requiring the reduction of their required stock ownership from 10% to 2% from January 1988 forward, and by not requiring PCA "...to decrease the stock requirement as the amount of the outstanding loan decreased as provided for under Section 4.3(a)(12) U.S.C.S. 2154(a). Appellants' Brief, p. 39.

Effective January 1, 1988, the Farm Credit Act, 12 U.S.C. Section 2001 et seq., was amended to provide, in relevant part:

> "[T]he bylaws [of a PCA]...shall require that - (i) as a condition of borrowing from or through the institution, any borrower who is entitled to hold voting stock or participation certificates shall, at the time a loan is made, acquire voting stock or participation certificates in an amount not less than $1,000 or 2 percent of the amount of the loan, whichever is less,...."

5

12 U.S.C. Section 1254(C)(E). By its terms, the statute imposes a floor, not a ceiling. Nonetheless, in March 1989, the PCA Board of Directors reduced the Adcock's 10% stock requirement to 2%.

There is no showing by the Adcocks that PCA was required to reduce its stock requirement at anytime, for their loans were made prior to the effective date of the amendment. Moreover, there is no showing that PCA was required to reduce the stock ownership requirement as the Adcock's indebtedness decreased.

By separate order, the decision will be affirmed.

DONE this 25TH day of March, 1997.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON